824 So.2d 228 (2002)
BUCKEYE CHECK CASHING, INC., a foreign corporation d/b/a Checksmart, Appellants,
v.
John A. CARDEGNA and Donna Reuter, etc., et al., Appellees.
No. 4D01-3549.
District Court of Appeal of Florida, Fourth District.
July 24, 2002.
Rehearing Denied September 4, 2002.
*229 John R. Hart and Michael J. Compagno of Carlton Fields, P.A., West Palm Beach, and James P. Murphy, Amy L. Brown and James P. Wehner of Squire, Sanders & Dempsey, L.L.P., Washington, D.C., for appellant.
E. Clayton Yates of Law Offices of E. Clayton Yates, P.A., Fort Pierce, and John R. Newcomer and Christopher C. Casper of James, Hoyer, Newcomer & Smiljanich, P.A., Tampa, and Richard A. Fisher of Logan, Thompson, Miller, Bilbo, Thompson and Fisher, Cleveland, TN, for Appellees John A. Cardegna and Donna Reuter, individually and on behalf others similarly situated.
DELL, JOHN W., Senior Judge.
Appellant, Buckeye Check Cashing, Inc., timely appeals from an order that denied its motion to compel arbitration and to stay proceedings. We reverse and remand.
Appellees brought a class action lawsuit against Appellant. They alleged that Appellant made illegal usurious loans disguised as check cashing transactions in violation of various Florida Statutes. In response, Appellant filed a motion to compel arbitration and to stay proceedings, pursuant to the provisions for arbitration contained in the deferred deposit and disclosure agreement signed by Appellees. The agreement provided in pertinent part:

Arbitration provisions. Any claim, dispute, or controversy (whether in contract, tort or otherwise, whether preexisting, present, or future, and including statutory, common law, intentional tort, and equitable claims) arising from or relating to this Agreement ... or the validity, enforceability, or scope of this Arbitration Provision or the entire Agreement (collectively "Claim"), shall be resolved, upon the election of you or us or said third-parties, by binding arbitration pursuant to this Arbitration Provision.... This arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. Sections 1-16.
Appellees filed a memorandum in opposition to Appellant's motion to compel arbitration in which they argued that the arbitration agreement should not be enforced because it is contained in an illegal usurious contract and is, therefore, void ab initio. Appellees also asserted that the arbitration clause was unconscionable. However, Appellant correctly points out that at the hearing before the trial court, Appellees did not argue that the arbitration provision was unconscionable. Accordingly, the issue of unconscionability is not properly before this court for review. See Parlier v. Eagle-Picher Indus., Inc., 622 So.2d 479 (Fla. 5th DCA 1993).
The trial court denied Appellant's motion to compel arbitration, relying on Party Yards, Inc. v. Templeton, 751 So.2d 121 (Fla. 5th DCA 2000), and FastFunding v. Betts, 758 So.2d 1143 (Fla. 5th DCA 2000). Appellant contends the Federal Arbitration Act applies and that the trial court erred when it failed to construe the arbitration *230 provision in a manner consistent with Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), and its progeny. Appellant also contends the trial court misplaced its reliance on Party Yards and FastFunding. We agree.
Appellant correctly argues that federal law controls because the arbitration agreement expressly provides that "this arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act...." See Donald & Co. Sec., Inc. v. Mid-Florida Cmty. Services, Inc., 620 So.2d 192 (Fla. 2d DCA 1993).
In Prima Paint Corp., 388 U.S. at 403-04, 87 S.Ct. 1801, the Supreme Court stated:
Accordingly, if the claim is fraud in the inducement of the arbitration clause itself an issue which goes to the `making' of the agreement to arbitratethe federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.... We hold, therefore, that in passing upon a s 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate.
(footnotes omitted)
In Manning v. Interfuture Trading, Inc., 578 So.2d 842 (Fla. 4th DCA 1991), this court affirmed an order compelling arbitration because the record showed that the appellant's claim of fraud in the inducement in the making of the arbitration agreement was actually based on the entire transaction rather than only the arbitration agreement. The court, in Manning, stated:
In several subsequent cases the holding in Prima Paint has been construed as requiring that where the entire transaction is infected by the alleged fraud or other ground for avoidance, the matter should be submitted to arbitration. Put another way, a rule has been distilled from the Prima Paint rationale that only where the attack is specifically and exclusively directed toward the arbitration clause or a separate agreement to arbitrate may the court try the issue before submitting the balance of the controversy to arbitration....
Id. at 843 (citations omitted). See also Spitz v. Prudential-Bache Secs., Inc., 502 So.2d 479 (Fla. 4th DCA 1987).
Appellees do not challenge the validity of the arbitration provision. Rather, they contend that the underlying contract is void ab initio because it is criminally usurious and, therefore, never existed at all. They further argue that Party Yards[1], FastFunding, and Chastain v. Robinson-Humphrey Co., 957 F.2d 851 (11th Cir. 1992), support the general proposition that a trial court must determine the legal validity of the underlying contract before compelling arbitration. However, Chastain is consistent with the Supreme Court's decision in Prima Paint and does not support Appellees' argument. In Chastain, the appellant denied that she had signed the customer agreements that contained the arbitration clauses. The court stated that

*231 Because on the unusual facts of this case we believe that "the making of the arbitration agreement ... [is] in issue,".... Chastain is entitled to have the district court, rather than a panel of arbitrators, determine whether or not she agreed to arbitrate her claims against Robinson-Humphrey.
Chastain, 957 F.2d at 852-53.
Appellees argue that the trial court was correct because the court in Chastain said, "[h]owever, if the validity of the agreement to arbitrate is in issue, a district court, not a panel of arbitrators, must decide if the arbitration clause is enforceable against the parties." Id. at 854. We are not persuaded by this argument. The Chastain court also said "[t]hus, `the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.'" Id. (citation omitted) Additionally, the court noted that it
recognizes that the Prima Paint doctrine has been extended to require arbitration panels to decide many issues regarding the validity of a contract containing arbitration languageincluding allegations that such contracts are voidable because they involved duress, undue coercion, confusion, mutual mistake, or unconscionability.
Id. at 855 (citations omitted).
In Bess v. Check Express, 294 F.3d 1298 (11th Cir. 2002), the court of appeals considered the use of Chastain as support for an argument that the underlying contract was void ab initio. The court stated:
Likening his void ab initio allegations to the contentions in Chastain that no contract ever existed, Colburn argues that, as in Chastain, the court must determine the legality of the deferred payment transactions before deciding whether to compel arbitration. But the focus of the court's decision in Chastain, as just explained, was on the question of assent, i.e., whether the parties mutually had agreed to the contracts. By contrast, Colburn urges that the transactions in this case are void, not because he failed to assent to the essential terms of the contracts, but because those terms allegedly render the contracts illegal under Alabama law. At bottom, Colburn challenges the content of the contracts, not their existence. Indeed, unlike the contracts in Chastain, both the arbitration agreement and the deferred payment contracts were signed by Colburn, and there is no question about Colburn's assent to those contracts. Thus, this case falls within the "normal circumstances" described in Chastain, where the parties have signed a presumptively valid agreement to arbitrate any disputes, including those about the validity of the underlying transaction. Therefore, the issue raised by Colburnwhether the deferred payment transactions are void as illegalis one for the arbitrator, not the court.
None of the decisions cited by Colburn from our sister circuits counsels a different conclusion. Like Chastain, all of those cases involved questions of assent to the general contract.... See Burden v. Check Into Cash of Kentucky, LLC, 267 F.3d 483, 489-90 (6th Cir.2001) (concluding that plaintiffs' allegations that deferred payment contracts were void as illegal constituted challenge to substance of loan agreements and should thus be decided by arbitrator rather than by court). Because Colburn's void ab initio argument is an issue for the arbitrator, it does not furnish an adequate basis for denying PayDay's motion to compel arbitration.
Id. at 1305-06 (emphasis supplied in original)
*232 Here, appellees did not argue that they did not enter into the arbitration agreement, nor did they challenge the validity of the terms of the arbitration agreement. Accordingly, we reverse the trial court's order denying appellant's motion to compel arbitration and remand this cause for further proceedings.
REVERSE AND REMANDED.
SHAHOOD and HAZOURI, JJ., concur.
NOTES
[1] In Party Yards, the district court of appeal stated, "we find that the trial court's reliance on Prima Paint was misplaced because that case is inapplicable under the facts presented here. In this case, the language in the arbitration provision of the contract is not broad enough to encompass a usury violation...." Here, however, the arbitration provision expressly includes statutory claims and is broad enough to encompass a usury violation.